```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/28/2014___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
                                                        :
            -against-                                   :            14-CR-123 (VSB)
                                                        :
                                                        :       **MEMORANDUM AND ORDER**
ISHITA GANGULY,                                         :
                                                        :
                                    Defendant.          :
-------------------------------------------------------- X


<u>VERNON S. BRODERICK, United States District Judge</u>:

        Defendant Ishihta Ganguly has moved the Court:  (1) to dismiss Count One of the

Indictment as duplicitous; (2) to dismiss and preclude the government from offering evidence

related to the alleged fraud against an investor from Switzerland (the "Swiss Investor") because

the Court lacks jurisdiction; (3) for a bill of particulars; (4) to issue subpoenas pursuant to Rule

17(c); and (5) for an order directing the government to produce *Brady/Giglio* material, disclose

other crimes evidence pursuant to Rule 404(b), and produce a list of trial exhibits and *Jencks Act*

material well before trial.  Oral argument was heard on the motion on July 7, 2014.

        For the reasons stated on the record during oral argument and set forth below,

Defendant's Motion:  (1) to dismiss Count One is denied as Count One is not duplicitous; (2) to

dismiss and preclude the government from offering evidence related to alleged fraud against the

Swiss Investor is granted as to Count One and Count Two and is denied as to Count Three,

because the Court has  jurisdiction to hear such evidence as to the money laundering count but

does not have jurisdiction to hear such evidence as to the securities fraud and wire fraud counts;

(3) for a bill of particulars is denied as the Indictment, Complaint, and discovery sufficiently inform Defendant of the nature of the charges against her; (4) for subpoenas is denied, but the parties are directed to meet and confer concerning the appropriate scope of any defense subpoenas; and (5) for an order directing the government to produce *Brady/Giglio* material, disclose other crimes evidence pursuant to Rule 404(b), and produce a list of trial exhibits and *Jencks Act* material well before trial is denied, except that the government is directed to provide Rule 404(b) notice on or before October 20, 2014.

### I.    Background

On December 21, 2013, Defendant Ishita Ganguly was arrested pursuant to a sealed criminal complaint (the "Complaint").  (13 Mag. 2899)  The Complaint was unsealed by Magistrate Judge Gorenstein on December 23, 2013.  The Complaint charged Defendant with securities fraud, wire fraud, and money laundering.  (*Id.*)  On February 20, 2014, Ganguly was charged in a three count indictment (the "Indictment").  (Doc. 7)  Count One charges Defendant with securities fraud, Count Two charges Defendant with wire fraud, and Count Three charges Defendant with money laundering.  (*Id.* at 2-5.)

On May 30, 2014, Defendant filed her pretrial motions seeking:  (1) to dismiss Count One of the Indictment as duplicitous; (2) to dismiss and preclude the government from offering evidence related to the alleged fraud against Deniz Graf; (3) for a bill of particulars; (4) to issue subpoenas pursuant to Rule 17(c); and (5) for an order directing the government to produce *Brady/Giglio* material, disclose other crimes evidence pursuant to Rule 404(b), and directing the government to produce a list of trial exhibits and *Jencks Act* material well before trial.  (Doc. 20)  The government filed its opposition on June 24, 2014, (Doc. 33), and Defendant filed her reply on July 1, 2014, (Doc. 34).  Oral argument was held on the motions on July 7, 2014, and I

rendered decisions on the motions at that time.  This Memorandum and Order provides

additional explanation for my decisions.

## II.    <u>**Sufficiency of the Indictment**</u>

Defendant Ganguly challenges the Indictment in two ways.  First, Ganguly seeks the

dismissal of Count One on the grounds that it is "impermissibly duplicitous."  (Def't Br. 2-4)[1]

Specifically, Ganguly claims that Count One contains two or more distinct crimes, and should be

dismissed.  (*Id.*)  Second, Ganguly claims that most of the conduct related to the Swiss Investor

occurred outside the jurisdiction of the United States, and therefore this Court lacks jurisdiction

to hear evidence related to this alleged criminal conduct.  (*Id.* 4-8.)

### A.    <u>*The Indictment Is Not Impermissibly Duplicitous*</u>

"An indictment is impermissibly duplicitous where:  1) it combines two or more distinct

crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a

separate count for each offense,' and 2) the defendant is prejudiced thereby."  *United States v.*

*Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *United States v. Murray*, 618 F.2d 892, 896

(2d Cir. 1980)).  The danger and potential prejudice posed by duplicitous counts include:  (1) the

potential lack of notice of the precise crime charged and its maximum penalty; (2) the possibility

that a second trial on the same offense would not be barred by the Double Jeopardy Clause; and

(3) the potential uncertainty with respect to the jury's verdict and the attendant sentencing

implications of the verdict.  *See id.* at 77-78; *accord United States v. Olmeda*, 461 F.3d 271, 281-

82 (2d Cir. 2006).  However, the Second Circuit has long held that "acts that could be charged as

---

[1] "Def't Br." refers to Defendant Ishita Ganguly's Memorandum of Law in Support of Her Motion For Omnibus
Relief.  (Doc. 28)

separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989). "As long as the essence of the alleged crime is carrying out a single scheme to defraud, then aggregation is permissible." *Id.*; *see also United States v. Bryan*, 868 F.2d 1032, 1037-38 (9th Cir. 1989) ("[T]he defrauding of *different people* over an extended period of time, using *different means and representations*, may constitute but one scheme. As long as the set of fraudulent transactions alleged in a count is within the conceivable contemplation of a greedy mind, no duplicity has occurred.") (emphasis in original, internal citations and quotation marks omitted).

Here the Indictment charges Ganguly with participating in a single scheme. Specifically, the Indictment alleges and the government indicates it expects to prove at trial that "(i) each investor was solicited by the defendant and/or others working with her to invest in an Astute Partners entity based on representations that their investments would be used to purchase certain kinds of securities, which would generate guaranteed rates of return; (ii) contrary to the representations made by the defendant and her confederates, the funds deposited by the investors were never used in connection with any investment program; and (iii) instead, the defendant diverted the funds for her own personal use." (Gov't Br. 6 (citing Indictment ¶¶ 3-5).)[2] The fact that the investors may have invested different amounts and were promised different rates of return, does not alter the fact that the Indictment charges "a single overarching scheme to defraud investors by convincing them to invest in Astute Partners on the basis of similar false

---

[2] "Gov't Br." refers to the Government's Opposition to Defendant's Pre-Trial Motions. (Doc. 33.) Although the government refers to "others" and "confederates" in its brief, the Indictment does not contain a conspiracy charge, nor does it specifically reference "others" or "confederates."

representations," (Gov't Br. 6).  *See United States v. Vilar*, 05-CR-621, 2008 WL 4298545, at *1

(S.D.N.Y. Sept. 5, 2008), *aff'd* 729 F.3d 62 (2d Cir. 2012) ("Here, the Defendants employed a

variety of means to carry out their conspiracy, but the overarching scheme alleged was a unified

one: to defraud Amerindo clients by inducing them, on the basis of similar misrepresentations, to

invest in a variety of investment products."); *United States v. Crosby*, 294 F.2d 928, 945 (2d Cir.

1961) ("It is certainly no problem that not all the details were formulated at the outset; 'A single

scheme to defraud may involve a multiplicity of ways and means of action and procedure.  It

may be such that the complete execution of it would involve the commission of more than one

criminal offense.  Mere details may be changed and the scheme remain the same.'") (quoting

*Mansfield v. United States*, 155 F.2d 952, 953 (5th Cir. 1946)); *see also United States v. Morse*,

785 F.2d 771, 774 (9th Cir. 1986) (indictment describing a scheme to defraud involving four

investment programs charged a single scheme and was not duplicitous).

## B.  *The Defendant's Motion Related to the Swiss Investor*

Defendant claims that all of the conduct related to the alleged fraud perpetrated against

the Swiss Investor occurred outside of the United States, and therefore the Court lacks

jurisdiction over the fraud allegedly perpetrated against the Swiss Investor.  (Def't Br. 4-8.)  As

an initial matter, since none of the charges relate exclusively to the Swiss Investor, Defendant's

Motion appears to seek the exclusion of evidence related to the Swiss Investor.  As the

Government notes, (Gov't Br. 12 n.7), motions that seek to preclude evidence are typically

addressed *in limine* shortly before trial once the evidence to be offered at trial has crystallized.

Therefore, Defendant's Motion is premature to the extent that it seeks to exclude evidence

related to the Swiss Investor.  However, I will address the jurisdictional issue as it relates to the

charges in the Indictment.

5

Defendant's Motion raises the legal issue of the extraterritorial application of the statutes under which Ganguly has been charged.  The Government concedes that Count One "does not apply extraterritorially."  (Gov't Br. 11 (citing *Vilar*, 729 F.3d at 72).)  However, the Government argues that the evidence related to the Swiss Investor is still admissible because the "evidence is substantive proof of the offenses charged in Counts Two and Three," and as uncharged acts because it:  (1) arose out of the same transaction as a charged offense; (2) is inextricable intertwined with the evidence of a charged offense; or (3) is necessary to complete the story of the charged conduct.  (*Id.* 12.)  As discussed below, Count Two – the wire fraud count – cannot be applied to extraterritorial conduct, so evidence related to the Swiss Investor is not admissible as substantive evidence of Count Two.  However, such proof would be admissible as proof related to Count Three – the money laundering count – which, as discussed below, can be applied to extraterritorial conduct.  I do not decide at this time whether evidence related to the Swiss Investor is also admissible as an uncharged act.  The Government should include a request to offer this evidence as an uncharged act at the same time as it seeks permission to introduce Rule 404(b) evidence.[3]

The Second Circuit addressed the extraterritorial application of the wire fraud and money laundering statutes as RICO predicates in its recent decision *European Community v. RJR Nabisco, Inc.*[4]  Specifically, the Second Circuit held that "RICO applies extraterritorially if, and

---

[3] In addition, I will revisit my rulings granting Defendant's Motion as it relates to Count One prior to trial if the Government proffers sufficient domestic conduct related to the alleged securities fraud violation involving the Swiss Investor.

[4] During oral argument I indicated that based upon my reading of the wire fraud statute, it could apply to extraterritorial conduct.  (Doc. 36 at pg 5)  However, during oral argument I was unaware of the Second Circuit's

only if, liability or guilt could attach to extraterritorial conduct under the relevant RICO predicate." *European Cmty. v. RJR Nabisco, Inc.*, 11-CV-2475, 2014 WL 1613878, at *4 (2d Cir. Apr. 23, 2014), as corrected (Apr. 29, 2014).  The Court went on to analyze whether or not the predicate acts contained in the Complaint, including wire fraud and money laundering, could apply to extraterritorial conduct.

With regard to the wire fraud, the Second Circuit held that "the references to foreign commerce in [the] statute[], deriving from the Commerce Clause's specification of Congress's authority to regulate, do not indicate a congressional intent that the statutes apply extraterritorially."[5] *Id.* at *8.  Therefore, the Government's argument that "by its plain terms, the wire fraud statute applies to wirings occurring in 'foreign commerce'" (Gov't. Br. 9), is wrong.

Defendant's Motion as it relates to Count Two is granted.  However, I will revisit this ruling prior to trial if the Government proffers sufficient domestic conduct related to the alleged wire fraud violation involving the Swiss Investor.

The money laundering statute does apply extraterritorially.  In the context of RICO allegations "money laundering predicates apply extraterritorially 'if (1) the conduct is by a United States citizen . . . and (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.'"  *European Cmty.*, 2014 WL 1613878, at

---

decision in *European Community*.  My ruling here – that the wire fraud statute does not apply to extraterritorial conduct – supersedes my ruling during oral argument.

[5] In reaching this conclusion, the Second Circuit explicitly stated that the Supreme Court's suggestion in *Pasquantino v. United States*, 544 U.S. 349, 371-72 (2005), cited to by the Government in its brief in this case, that "the wire fraud statute punishes frauds executed 'in interstate or foreign commerce' [so this] is surely not a statute in which Congress had only domestic concerns in mind" was dictum and was explicitly rejected by the Court in *Morrison*.  *European Cmty.*, 2014 WL 1613878, at *8 n.10.  Therefore, the Second Circuit did not "read *Pasquantino* to require [it] to construe the 'foreign commerce' language of the wire fraud statute as rebutting the presumption against extraterritoriality."  *Id.*

*8 (quoting 18 U.S.C. § 1956(f)).  Indeed, Section 1956(f) explicitly provides that "'[t]here is extraterritorial jurisdiction over the conduct prohibited by this section.'"  *Id*. (alteration in original) (quoting 18 U.S.C. § 1956(f).  Similarly, Section 1957 also criminalizes knowingly engaging "'in a monetary transaction in criminally derived property of a value greater than $10,000 . . . derived from specified unlawful activity,' if the offense '*takes place outside the United States* . . ., but the defendant is a United States person.'"  *Id*. (emphasis in original) (quoting 18 U.S.C. § 1956(f)).

Ganguly is a United States citizen, and can be convicted of money laundering based upon exterritorial conduct.  This Court has jurisdiction to hear the allegations in Count Three as it relates to the Swiss Investor, and Defendant's Motion is denied as it relates to Count Three.[6]

### III.     Defendant Is Not Entitled to a Bill of Particulars or Additional Discovery

Defendant requests this Court to direct the Government to provide her with a bill of particulars, pursuant to Federal Rule of Criminal Procedure 7(f), and additional discovery. (Def't Br. 8-10)  Specifically, Defendant requests the identity of all victims, the amount of losses the Government intends to hold her responsible for, the identification and/or description of her conduct the Government claims to be fraudulent, full email addresses, and expert reports from any experts who may be called to testify at trial.[7]  (*Id*. 9-10.)  In response the Government states

---

[6] As directed during oral argument on July 7, 2014, any superseding indictment must be filed on or before October 3, 2014.

[7] I note much of the information requested by Defendant is nothing more than a request for additional discovery, and is therefore not the appropriate subject for a bill of particulars.  *United States v. Gibson*, 175 F.Supp.2d 532, 537 (S.D.N.Y.2001) ("A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial.").  In addition, Defendant's request for "the reports of any and all expert witnesses who may be called to testify," (Def't Br. 9), is improper to the extent that it is a request for disclosure beyond that required by the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P.

that Defendant's Motion for a bill of particulars should be denied "because the Complaint, the Indictment, and the thousands of pages of discovery produced to date provide the defendant with adequate notice of the charges against her." (Gov't Br 14.) As discussed below, Defendant's Motion for a bill of particular is denied.[8]

An indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Therefore, an indictment should be specific enough for a defendant to prepare a defense, and thereby permit a defendant to "be informed of the nature and cause of the accusation." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999). An insufficient indictment may be supplemented by a bill of particulars. *See* Fed. R. Crim. P. 7(f).

The intent of a bill of particulars is to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted for a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *Gibson*, 175 F. Supp. 2d at 537. A bill of particulars "is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means." *Walsh*, 194 F.3d at 47.

---

16(a)(1)(F) and (G). To the extent the Government intends to call expert witnesses, it must make the appropriate disclosures called for by the Rules of Criminal Procedure on or before October 3, 2014.

[8] Although the request for a bill of particulars is denied, the Government is directed to provide Defendant with a list of alleged investor victims on or before October 20, 2014.

Here, the Indictment appears to set forth a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). However, assuming that the Indictment was insufficient to inform Defendant of the nature of the charges against her, she was initially charged in a ten page criminal complaint that provides her with additional information concerning the nature of the charges against her, including an outline of the alleged scheme to defraud, a description of how that scheme was allegedly implemented against two investor victims, and the identity of certain of the relevant individuals and entities. (13 Mag. 2899.)  The Government also claims that it has produced thousands of pages of discovery material, including "contracts and other materials provided to investors," emails purportedly from Defendant in which she allegedly "makes representations about the purported investments," and bank records that demonstrate what happened to the money invested by alleged victims.  (Gov't Br. 15.)  Therefore, the Government has disclosed through the Indictment, Complaint, and discovery more than ample material for Defendant to understand "the nature of the charge pending against [her], thereby enabling [her] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [s]he be prosecuted for a second time for the same offense." *Bortnovsky*, 820 F.2d at 574.  Indeed, the material provided by the Government apparently enabled Defendant to identify at least five victims by name.  (*See* Tormey, Jr. Decl. ¶¶ 23, 31, 45 and 61.)[9]

Defendant's request for a bill of particulars is denied.

### IV.     Defendant's Request for Subpoenas Is Denied

---

[9] "Tormey Decl." refers to the Declaration of Thomas A. Tormey, Jr.

For the reasons stated on the record during the July 7, 2014 conference, Defendant's request for subpoenas is denied.  As directed during the conference, the Government and Defendant should meet and confer concerning the appropriate scope of any defense subpoenas. To the extent the parties are unable to reach agreement, they should notify the Court.

**V.      Defendant's Request for an Order Related to *Brady/Giglio* Material, 404(b) Evidence, Trial Exhibits, and *Jencks Act* Material Is Denied**

For the reasons stated on the record during the July 7, 2014 conference, Defendant's request for an order directing the government to produce *Brady/Giglio* material, disclose other crimes evidence pursuant to Rule 404(b), and directing the government to produce a list of trial exhibits and *Jencks Act* material before trial is denied.  The Government will provide Rule 404(b) notice by October 20, 2014.  At oral argument, the Government promised to provide *Brady/Giglio* material *and Jencks Act* material to Defendant on a rolling basis.

**VI.      Conclusion**

For the reasons stated on the record during oral argument on July 7, 2014, and stated above, Defendant's Motion:

(1) to dismiss Count One of the Indictment as duplicitous is DENIED;

(2) to dismiss and preclude the government from offering evidence related to the alleged fraud against the Swiss Investor because the Court lacks jurisdiction is GRANTED AS TO COUNTS ONE AND TWO AND DENIED AS TO COUNT THREE;

(3) for a bill of particulars is DENIED;

(4) to issue subpoenas pursuant to Rule 17(c) is DENIED, and the parties are directed to meet and confer regarding the appropriate scope of any defense subpoenas; and

(5) for an order directing the government to produce *Brady/Giglio* material, disclose other crimes evidence pursuant to Rule 404(b), and directing the government to produce a list of trial exhibits and *Jencks Act* material before trial is DENIED, except as provided for above.

A jury trial is set to begin on November 3, 2014.  Proposed voir dire questions, jury instructions, verdict forms or trial memoranda shall be filed on or before October 30, 2014.

SO ORDERED.

Dated:    August 28, 2014
          New York, New York

Vernon S. Broderick
United States District Judge