UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                :

    - v. -                                              :        14 Cr. 123 (VSB)

ISHITA GANGULY,                          :

    Defendant.                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                                            PREET BHARARA
                                                             United States Attorney for the
                                                             Southern District of New York
                                                             Attorney for the United States of America


Brendan F. Quigley
Assistant United States Attorney
     - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :   14 Cr. 123 (VSB) |
| ISHITA GANGULY, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**SENTENCING MEMORANDUM**

The Government respectfully submits the following memorandum in connection with the sentencing of Ishita Ganguly, which is scheduled for February 17, 2015.  The defendant, the Government, and the Probation Department all agree that the applicable Guidelines range is 41 to 51 months' imprisonment.  The Government respectfully submits that a sentence within that range is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

**I.  Offense Conduct and the Plea Agreement**

A.  **Offense Conduct**

Ganguly was personally and directly involved in soliciting millions of dollars from investors by the use of false representations.

During 2012, Ganguly represented herself to be a Managing Director of Astute Partners (BVI) Ltd. ("Astute BVI"), an entity based in the United Kingdom and registered in the British Virgin Islands.  Astute BVI is a related entity of Astute Partners Corp. ("Astute Partners"), an entity incorporated in the State of Florida.   PSR ¶ 10.

### 1. Investor-1 and Investor-2

In the spring of 2012, other individuals referred Investor-1, a Michigan resident,[1] and Investor-2, a Florida resident,[2] to the defendant in connection with a purported investment opportunity in Astute Partners (the "Investment Opportunity").  In short, the purported Investment Opportunity required the investors to send $1 million to an account controlled by Ganguly.  The investors were promised that, after 21-days, the investors would receive a $10 million return.

The defendant was personally involved in soliciting these investors.   She sent them e-mails about the investment.  For example, in an April 19, 2012 e-mail to Investor-2, she stated that the investment involved a 21-day leverage program in which the investor would provide $1 million and would receive $10 million at the end of 21 banking day. Ex. A, Compl ¶ 10(b).  In a similar e-mail to Investor-1 on May 15, 2012, she asserted that the one million dollar investment would be put in a "leverage program" and that the investor would receive $10 million back at the end of 21 banking days.  *See* Ex. A, Compl. ¶ 10(b).  She spoke also spoke to Investor-2 on the phone.  *Id.*  ¶ 13(a).  And she either sent or was copied on the investment contracts that were e-mailed to both investors, which reiterated that, to participate in the investment program, the investor had to invest $1 million and represented that, after 21 banking days, the investor would "receive an additional return of $10 million." PSR ¶ 12.

Both Investor-1 and Investor-2 executed their respective contracts and, pursuant to the instructions in the contract, wired $1 million to an account in the name of "Astute Partners

---

[1] .

[2]

Corp." at Citibank in New York (the "Account").  The defendant is the sole signatory on the Account.  PSR ¶ 13.

About two weeks after Investor-2 sent his $1 million investment to the Account, Ganguly met with him in New York City, discussed the investment, and represented that trading had already begun. Around this same time, however, Ganguly made over one million dollars of withdrawals and transfers out of the account, including a $100,000 transfer to another personal bank account belonging to her. Ex. A ¶ 14(b); PSR ¶ 15.  During this same late April, early May time period, Ganguly also purchased approximately $300,000 worth of jewelry.  Ex. A ¶ 16(a); *see* PSR ¶ 15.

### 2. Other Investors

The Government's investigation has revealed that, in addition to Investor-1 and Investor-2, the defendant and her confederates solicited at least three other investors to invest in programs substantially similar to the Investment Opportunity promised to Investor-1 and Investor-2. While the precise terms and conditions of the investment contracts between these other investors and Astute Partners (BVI) were, in some cases, different than those involving Investor-1 and Investor-2, the scheme was the same. PSR ¶ 16.  The investor was required make a significant initial investment, with the promise that, through use of a "leverage program," the investor would receive outsized returns after a certain number of "banking day(s)."  *Id.*

First, Ganguly was involved in soliciting a Florida investor, Investor-3,[3] to invest in an Astute Partners leverage program.  In the course of making his investment, Investor-3 communicated with Ganguly via Skype and met with her in-person.  Investor-3 invested $1

---
3

million in Astute Partners and has not received any return on his initial investment. Investor-3 also introduced Investor-1 to Ganguly. *See* Ex. A ¶ 13a (referring to Investor-3 as "Individual 1").

Second, on or about April 3, 2012, Investor-4, a Swiss national,[4] invested €3,000,000 in an Astute Partners (BVI) Ltd. in the United Kingdom based on promises that his money would be placed in a leveraged program and that he would receive a ten-fold return. *See* PSR ¶ 16. An individual named Paul Parker was primarily responsible for soliciting Investor-4. Nevertheless, approximately two-thirds of Graf's investment, €1,900,000, or $2,409,750, was wired to an account belonging to Ganguly at Citibank in May 2012. On or about June 29, 2012, after Investor-4 complained about the fact that he had not received any return on his investment, Ganguly sent him an e-mail telling him that he had "two choices"—sign a "hold harmless agreement" or pursue legal action against Astute Partners, in which case the company would hold onto his funds for the duration of any legal action. *See* Ex. B.

Finally, the Government learned that in March and April 2013, approximately a year after Investors 1 through 4 made their investors, a Kentucky investor, Investor-5,[5] wired $6,404,537.35 to an Astute Partners account controlled by Ganguly. Although the Government was unable to obtain a signed copy of Investor-5's investment contract, it appears Ganguly repeatedly corresponded with him via e-mail about his investment and that the purported investment involved generally similar terms to the investments discussed above—i.e., after an initial deposit, Investor-5 would receive outsized returns after a certain number of banking days.

---

[4]

[5]

4

**B. The Plea Agreement**

On October 3, 2014, the defendant pled guilty, pursuant to a plea agreement, to a Count One of Indictment 14 Cr. 123 (VSB), which charged her with engaging in a scheme to defraud investors who purchased shares in Astute Partners (BVI) Ltd, between approximately April and May 2012.  PSR ¶ 1.

Under the terms of the plea agreement, the parties stipulated to a sentencing Guidelines range of 41 to 51 months' imprisonment, based on an offense level of 22 and a Criminal History Category of I.  PSR ¶ 8(C).  The offense level is based, in part, on the addition of 16 points to the base offense level because the loss figure is between $2.5 million and $7 million, which derives from the investments of Investors 1 through 4.  PSR ¶ 8(A)(2).

In addition, at the time of sentencing, the defendant executed a preliminary order of forfeiture.  *See* Ex. C.

Finally, under the terms of the plea agreement, the defendant agrees to pay restitution in an amount ordered by the Court.

## II.  Discussion

The factors in 18 U.S.C. § 3553(a) support a Guidelines sentence in this case.

*First,* a Guidelines sentence is necessary in light of the nature and circumstances of the offense and to adequately reflect the seriousness of the offense, and for purposes of general deterrence.

Defendant's sentencing submission, at least to some extent, portrays the defendant as an unwitting accomplice of Paul Phillips.  Phillips is certainly a culpable actor in the Astute Partners scheme and is being prosecuted in the United Kingdom.  The defendant too, however, was an

5


essential part of the scheme. She was personally involved in soliciting Investors 1, 2 and 3.[6] And, in early May 2012, the defendant met about two weeks after Investor-2 sent his $1 million investment to the Account, Ganguly met with Investor-2 and represented that trading in the leverage program had already begun. Around this same time, however, the defendant was making hundreds of thousands of dollars of withdrawals and transfers with the funds that Investor-2 had entrusted to her. Ex. A ¶ 14(b); PSR ¶ 15.

Moreover, Investors 1 through 4 made their investments in early 2012. Investor 5 invested in early 2013. Ganguly was arrested in December 2013. The Government submits that, even crediting Ganguly's assertion that she initially believed the Investment Opportunity was legitimate, Ganguly must have realized that the program was in fact in fraud in the months before her arrest. Yet Ganguly made no effort to make amends to the investors or to alert the authorities. Instead, she continued to make use of the funds that she had misappropriated for her own use.

*Second*, a Guidelines sentence is also appropriate in light of the history and characteristics of the defendant. 18 U.S.C. 18 U.S.C. 3553(a)(1). The Government currently has no reason to dispute that Ganguly is currently suffering from the mental health issues outlined in the defendant's sentencing submission. That being said, the defendant apparently has

---

[6] In this respect, Ganguly is different than a number of the defendants in *United States* v. *O'Hara*, 10 Cr. 228 (LTS), the case cited on pages 22 and 23 of the defendant's sentencing submission. The defendants in the O'Hara case were primarily office employees who were in non-client facing roles. Here, Ganguly was personally and directly involved in soliciting investors, particularly Investors 1 and 2. Further, although the Government is not aware of all the facts and circumstances surrounding the *Kahn* case cited on pages 22 and 23 of the defendant's submission, the defendant in that case appears to have been involved in defrauding banks, who could, presumably, bear the loss of several million dollars better than individual investors, like the victims in the instant case.

6.2011

Case 1:14-cr-00123-VSB   Document 53   Filed 02/11/15   Page 8 of 8

a college degree[7] and a professional background in the financial services and real estate industries. PSR ¶¶ 51-56. The Government submits that this background makes the defendant more culpable in the instant offense than a defendant without this educational and professional background.

The Government will submit a proposed restitution order prior to sentencing.

### III. Conclusion

For the foregoing reasons, the Government respectfully submits that a sentence within the applicable Guideline ranges of 41 to 51 months' imprisonment is sufficient but not greater than necessary, to serve the legitimate purposes of sentencing.

Dated:  New York, New York
        February 11, 2015

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York

                            By:     _____
                                    Brendan F. Quigley
                                    Assistant United States Attorney
                                    (212) 637-2190

---

[7] PSR ¶ 48 (indicating that Baruch College has no record of the defendant's attendance).