Approved: *Christopher D. Frey*
CHRISTOPHER D. FREY/BRENDAN F. QUIGLEY
Assistant United States Attorneys

Before: THE HONORABLE JAMES L. COTT
United States Magistrate Judge
Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

           - v. -                 :

ISHITA GANGULY,                   :

                    Defendant.    :

- - - - - - - - - - - - - - - - - - x

**13 MAG 2899**

**SEALED COMPLAINT**

Violations of 15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. §§ 1343 & 2, 1957

COUNTY OF OFFENSE: NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

CEZARY TCHORZNICKI, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service ("IRS") and charges as follows:

COUNT ONE
(Securities Fraud)

1. From at least in or about April 2012, up to and including at least in or about May 2012, in the Southern District of New York and elsewhere, ISHITA GANGULY, the defendant, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of the national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit

upon persons, to wit, investors who purchased shares in a company called Astute Partners (BVI) Ltd.

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT TWO
### (Wire Fraud)

2. From at least in or about April 2012, up to and including at least in or about May 2012, in the Southern District of New York and elsewhere, ISHITA GANGULY, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly and willfully did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, GANGULY solicited and then misappropriated millions of dollars from investors, through the use of e-mail messages, telephone calls, and wire transfers, including the transfer of funds from investors, by making false and misleading representations regarding rates of return in a purported investment scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Money Laundering)

3. From at least in or about April 2012, up to and including on or about March 29, 2013, in the Southern District of New York and elsewhere, ISHITA GANGULY, the defendant, knowingly and willfully engaged and attempted to engage in monetary transactions in criminally derived property of a value greater than $10,000 and which was derived from specified unlawful activity, namely, the offense charged in Count Two of this Complaint, to wit, GANGULY made multiple purchases worth over $10,000, and made multiple transfers of funds over $10,000, using the funds in the bank account in which she had directed the victims of the scheme charged in Count Two to deposit funds.

(Title 18, United States Code, Section 1957.)

The bases for my knowledge of the foregoing charges are, in part, as follows:

4.  I am a Special Agent with the IRS and I have been personally involved in the investigation of this matter. I have been a Special Agent with the IRS for approximately 18 years. I am also a licensed certified public accountant in the State of New York. During my time as a Special Agent with the IRS, my responsibilities have included the investigation of violations of the federal securities fraud and wire fraud statutes, among others, and I have participated in investigations principally involving those crimes as well as the crimes of money laundering and racketeering.

5.  This affidavit is based on my conversations with others, including other law enforcement agents. It is also based on my review of numerous documents, including, but not limited to, bank records, e-mails, and investment solicitation documents that ISHITA GANGULY, the defendant, caused to be provided to potential investors. This affidavit is further based on my conversations with individuals whom GANGULY solicited to invest money. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Relevant Individuals and Entities

6.  At all times relevant to this Complaint, ISHITA GANGULY, the defendant, represented herself to be a Managing Director of Astute Partners (BVI) Ltd. ("Astute BVI"), an entity based in the United Kingdom and registered in the British Virgin Islands.

7.  At all times relevant to this Complaint, Astute BVI was a related entity of Astute Partners Corp. ("Astute Partners"), an entity incorporated in the State of Florida.[1]

---

[1] Based on my review of certain documents filed with the Florida Department of State on or about December 19, 2011 concerning Astute Partners, I know that ISHITA GANGULY, the defendant, is listed as both the President and the Secretary of Astute Partners. Additionally, based on certain documents filed on or about June 4, 2013, I know that GANGULY is listed as the Secretary of Astute Partners.

3

### Overview of the Scheme to Defraud

8.  From at least in or about April 2012, up to and including at least in or about May 2012, ISHITA GANGULY, the defendant, solicited investors to send her millions of dollars on the basis of false representations that their investments would be used to purchase certain types of securities that would generate a guaranteed rate of return of 1000%. GANGULY then diverted those funds for her own financial benefit and not for the purposes she had told investors. Specifically, GANGULY used at least $2.5 million in investors' funds to purchase jewelry and a home located in Staten Island, New York.

### The Scheme to Defraud Investor-1 and Investor-2

9.  I have interviewed several investors who invested in Astute BVI based on oral and written representations made by ISHITA GANGULY, the defendant. Paragraphs 10 through 13 below set forth what I learned based on my interviews with two of these investors, and my review of various documents, including bank records and investment solicitation documents that these two investors received from GANGULY.

### Investor-1

10. Based on my conversations with an individual who invested approximately $1 million with Astute BVI ("Investor-1"), as well as my review of certain e-mail communications involving Investor-1, I have learned the following, among other things:

    a.  In or about May 2012, Investor-1, who resides in Michigan, was referred to ISHITA GANGULY, the defendant, by an individual not named herein ("Individual-1") for the purpose of a potential investment opportunity (the "Investment Opportunity").

4

b. In an e-mail message dated May 15, 2012 and sent from the e-mail account "ishita@astutepartners.com" (the "E-mail Account") to Individual-1 by an individual who signed the e-mail "Ishita Ganguly," Investor-1 was told, in sum and substance, that the Investment Opportunity required Investor-1 to deposit $1 million in an account designated by "Ishita Ganguly." The $1 million would be placed in a "leverage program," and the investor would receive a return on that investment of $10 million "after roughly 21 banking days." The e-mail also stated, in sum and substance and among other things, that the return on the investment would result from a "Private Managed Buy Sell Program" involving the "Contractual Purchase of Medium Term Notes at a set price and the Contractual Sale of Medium Term Notes at a higher price." The e-mail further stated that in the event Investor-1 was interested in the Investment Opportunity, "Ishita Ganguly" would send Investor-1 the pertinent documents, including an investment contract.

c. On or about May 17, 2012, another representative of Astute BVI not named herein sent Investor-1 an e-mail containing certain documents, including the investment contract ("Contract-1"). The E-mail Account was copied on this May 17, 2012 e-mail containing the attached documents.

11. I have obtained from Investor-1 copies of various typed documents that "Ishita Ganguly" sent from the E-mail Account or caused to be sent by e-mail to Investor-1, in connection with the request by "Ishita Ganguly" for funds from Investor-1. Based on my review of those documents, I have learned the following, among other things.

a. Contract-1 includes the following representations, among others:

i. in making an investment, the investor is providing full control and ownership to Astute BVI of the money invested for the period of "21 Banking Days";

ii. the investor "shall receive a share certificate . . . equal to the value of the contribution" and "such share certificate will be returned" by the investor upon return of the investment at the end of the "21st Banking Day";

5

        iii.    the investor's $1 million investment will be returned to the investor after 21 "Banking Day[s]," at which time the investor will receive an additional return of $10 million, and "at the same time the [investor] shall . . . return the Share Certificate" to Astute BVI.

    b.    Contract-1 also, in substance, instructs the investor to wire the $1 million investment to an account in the name of Astute Partners with a major financial institution based in New York, New York (the "Account").[2]

12.    Based on my conversations with Investor-1, as well as my review of certain e-mail communication involving Investor-1 and other documentation from Investor-1, I have learned the following, among other things:

    a.    Investor-1 executed Contract-1 and, on or about May 21, 2012, at Investor-1's direction, caused $1 million to be wired to the Account from Investor-1's account at a bank located in New York, New York.

    b.    On or about May 23, 2012, Investor-1 received an e-mail from the E-mail Account, in which "Ishita Ganguly" verified the receipt of the $1 million in funds wired by Investor-1 to the Account.

    c.    Contrary to the representations made in the e-mail, and the representations made in Contract-1, Investor-1 has never received any money back from Astute BVI, Astute Partners, or "Ishita Ganguly," despite Investor-1's repeated attempts to ascertain the status of Investor-1's investment.

---

[2] Based on my review of bank records associated with the Account, I know that an individual by the name of "Ishita Ganguly" is listed as the sole signatory on the Account and that the Account was opened in or about January 2012. In the account opening documentation for the Account, "Ishita Ganguly" listed a physical address in Staten Island, New York known to me to be an address for ISHITA GANGULY, the defendant. In addition, "Ishita Ganguly" listed a primary contact telephone number ending in 0975 (the "0975 Number"), which, as described later, was the telephone number used by another investor to contact GANGULY.

Investor-2

13.     Based on my conversations with another individual who invested approximately $1 million with Astute BVI ("Investor-2"), as well as my review of certain e-mail communication involving Investor-2 and various written documents that were sent by "Ishita Ganguly" from the E-mail Account or caused to be sent by e-mail to Investor-2, in connection with a request from "Ishita Ganguly" for funds from Investor-2, I have learned the following, among other things:

a.      In or about April 2012, Investor-2, who resides in Florida, was also referred to ISHITA GANGULY, the defendant, concerning the Investment Opportunity through Individual-1. At or about this same time, Investor-2 was provided with the 0975 Number, and thereafter placed a telephone call to the 0975 number and spoke briefly with an individual who identified herself as "Ishita Ganguly." During this call, "Ishita Ganguly" assured Investor-2, among other things, that the Investment Opportunity involved trades in medium term notes and that the trades were riskless to investors.

b.      On or about April 19, 2012, "Ishita Ganguly" sent Investor-2 an e-mail from the E-mail Account, stating, among other things, that the Investment Opportunity involved a "21 day leverage program" in which an investor would provide $1 million to Astute BVI. Once the "21 banking day trade program" was completed, the investor would receive his/her $1 million initial investment back, along with $10 million in "trade proceeds."

c.      Shortly after, on or about April 21, 2012, "Ishita Ganguly" sent Investor-2 an e-mail from the E-mail Account with a contract ("Contract-2") that, based on my review, is substantially similar to Contract-1. Among other things, Contract-2 included instructions regarding the wiring of funds to the Account.

d.      Investor-2 executed Contract-2 on or about April 21, 2012, and, on or about April 22, 2012, caused $1 million to be wired to the Account from an account held by Investor-2 at a bank in New York, New York.

e.      Subsequent to the $1 million wire transfer on or about April 22, 2012, Investor-2 arranged to meet with "Ishita Ganguly" in person. On or about May 5, 2012, Investor-2 and "Ishita Ganguly" met at a hotel located in lower Manhattan. During this in-person meeting, "Ishita Ganguly" discussed the

Investment Opportunity, including the fact that trading had already commenced.

   f. Investor-2 has never received any money back from Astute BVI, Astute Partners, or "Ishita Ganguly," despite Investor-2's repeated attempts to ascertain the status of Investor-2's investment.

### GANGULY Misappropriated At Least $2.5 Million

  14. Based on my review of bank records pertaining to the Account, I have learned the following with respect to Investor-2's investment:

   a. Bank account records pertaining to the Account reflect a $1 million incoming wire deposit made by Investor-2 on or about April 22, 2012.

   b. Immediately prior to the time that Investor-2's $1 million investment was wired into the Account on or about April 22, 2012, the Account's balance was $549,736.34. In the two weeks immediately after Investor-2's $1 million deposit was credited to the Account, while there were no additional deposits into the Account, ISHITA GANGULY, the defendant, withdrew approximately $1,022,000, including (1) an $884,000 transfer to an IOLTA account of a law firm[3] located in Arizona on or about April 27, 2012; and (2) a $99,999 transfer on or about April 30, 2012 from the Account to a personal bank account that I believe to belong to ISHITA GANGULY, the defendant. Less than three weeks after Investor 2's $1 million deposit, GANGULY transferred $100,000 from the Account to another of GANGULY's personal bank accounts on or about May 8, 2012.

  15. Based on my review of bank records pertaining to the Account, I have learned the following with respect to Investor-1's investment:

   a. Bank account records pertaining to the Account reflect a $1 million incoming wire deposit made by Investor-1 on or about May 21, 2012.

---

[3] Based on my review of the publicly available business website for this law firm, I know that the firm's advertised services include wills and trusts, powers of attorney, corporations & LLCs, asset protection, paymaster/escrow, contracts and real estate.

8

      b.    Immediately prior to the time that Investor-1's $1 million investment was wired into the Account on or about May 21, 2012, the Account's balance was $2,008,109.00. During the 17 days after Investor-1's $1 million investment was credited to the Account, ISHITA GANGULY, the defendant, withdrew approximately $300,000, including (1) a $100,000 transfer to a bank account in the name of an entity that I believe, based on a review of certain financial records, to be a personal holding company operated by GANGULY, and for which GANGULY has sole signature authority, on or about May 24, 2012; and (2) a $200,000 transfer to one of GANGULY's personal bank accounts on or about June 6, 2012.

      16.    Based on my review of bank records pertaining to the Account, there is no indication in these records that the funds from Investor-1 or Investor-2 were ever used in any "leverage program" or, for that matter, any other legitimate investment program. To the contrary, shortly after Investor-1 and Investor-2 transferred their respective $1 million investments to the Account, ISHITA GANGULY, the defendant, used funds that had been deposited into the Account for her own personal benefit. For example, and among other things:

      a.    Between on or about April 17, 2012 and May 21, 2012, GANGULY used a total of approximately $300,000 to purchase jewelry, including causing $117,000 to be wired directly from the Account on or about April 17, 2012 to the Manhattan bank account of a jewelry store located in New York, New York.

      b.    On or about August 9, 2012, GANGULY purchased a home located in Staten Island, New York for approximately $2.2 million.

   c. Between on or about May 21, 2012 and March 29, 2013, GANGULY caused a total of an additional $580,000 to be transferred from the Account to bank accounts for which GANGULY has sole signature authority.

 WHEREFORE, deponent prays that an arrest warrant be issued for ISHITA GANGULY, the defendant, and that she be arrested and imprisoned, or bailed, as the case may be.

```
_____
CEZARY TCHORZNICKI
Special Agent
Internal Revenue Service
```

Sworn to before me this
17th day of December, 2013

```
_____
HONORABLE JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK
```