UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :     14 Cr. 123 (VSB) |
| ISHITA GANGULY, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THE PETITION OF BOB N. ROBARDS**

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States of America

Andrew C. Adams
Assistant United States Attorney
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v. - | :   14 Cr. 123 (VSB) |
| ISHITA GANGULY, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE PETITION OF BOB N. ROBARDS

The Government respectfully submits this reply in support of its motion to dismiss the forfeiture petition (the "Petition") filed by Bob N. Robards. In his opposition to the Government's motion (the "Motion"), Robards argues that he is entitled to a modification of the preliminary order of forfeiture as to funds held in the restrained J.P. Morgan Chase & Co. escrow account ending in -2693 (the "Account") because he holds title to those funds as a "bailor." This argument, in substance, asserts a right to the funds held in the Account on the ground that title to those funds "was vested in [Robards] rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the [fraudulent] acts." 21 U.S.C. § 853(n)(6)(A).[1] As the Government noted in its opening brief, the Court must accept as true the factual assertions in the Petition, including the assertion that the funds held in the Account are entirely traceable to funds originally provided by Robards. Even accepting that assertion as true, however, there are no facts alleged that adequately state a valid basis for modification under §853(n). The Petition should be dismissed, and Robards should pursue repayment through the victim restoration procedures applicable to all victims in this case.

---

[1] Robards does not appear to pursue a claim to the funds held in the Account on the basis of 21 U.S.C. § 853(n)(6)(B), *i.e.*, that he is a "bona fide purchaser for value" of the funds held in that account.

I.     **Bailment of Under New York Law**

>Under New York law, a bailment is defined as:
>
>[A] delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be. It is essential that there be either an actual or constructive delivery by the bailor as well as actual or constructive acceptance by the bailee.

*Herrington* v. *Verrilli*, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001) (quoting *Mays* v. *New York, N.H. & H.R. Co.*, 97 N.Y.S. 2d 909, 911 (N.Y. App. Div. 1950)). [2]

In order to rely on a theory of bailment to assert a superior interest in the funds in the Account, a petitioner must plead that the Account, and the intermediary accounts through which funds were routed, were "special," as opposed to "general," bank accounts. *See United States* v. *Khan*, 129 F.3d 114, 1997 WL 701366 at *2 (2d Cir. Nov. 10, 1997) (summary order) ("Moreover, in this case, PAK American was not a licensed remitter, and (arguably as a result) the monies were deposited into general bank accounts, which, by itself, under New York law destroys a potential bailment."). "New York law recognizes two types of bank accounts: (1) a general bank account, in which title passes *to the bank* as soon as funds are deposited, the funds are commingled with other bank money, and the account holder has a contractual claim for the funds against the bank; and (2) a special or specific bank account, in which a bailment is created, title remains with the account holder, and the funds are separated from other deposits." *United States* v. *$79,000 in Account Number 2168050/6749900 at Bank of New York*, 1996 WL 648934 at *4 (S.D.N.Y. Nov. 7, 1996) (citing *Peoples Westchester Savings Bank* v. *Fed. Deposit Ins. Corp.*, 961 F.2d 327, 330 (2d Cir.1992)) (emphasis added). "Whether an account is general or specific depends upon the mutual intent of the parties." *Swan Brewery Co.* v. *United States Trust Co.*, 832 F. Supp. 714, 718

---

[2] The funds in the Account are held in a JP Morgan Chase Bank account in New York, and were allegedly transferred to the Account a separate Astute Partners account also located in New York (*see* Pet. 13 (""Ganguly . . . caus[ed] those funds to be transferred from the Astute Partners bank account to a trust or escrow account of Bronner."); *see also id.*, Ex. D (describing the Astute Partners account). Thus, the requirement of establishing an ownership interest over the funds is determined by New York law. *See Khan*, 129 F.3d 114.

(S.D.N.Y. 1993).  "Absent evidence of intent, New York law presumes that deposits are general rather than specific."  *$79,000*, 1996 WL 648934 at *4 (citing *Swan Brewery Co.*, 832 F. Supp. at 718–19).

A petitioner "cannot establish standing if [relevant accounts] were general accounts because even one who deposits funds in an account registered in his own name loses title to those funds as soon as they are deposited.  In a general account, the bank obtains title immediately upon deposit and the account holder receives a contractual right to recover from the bank the sum deposited."  *$79,000*, 1996 WL 648934 at *5 (citing 9 N.Y. Jur. 2d § 238 (1980) ("The legal effect of the transaction is that of a loan to the bank upon the promise and obligation ... to pay or repay the amount deposited, usually upon demand.")).  A depositor into a general account "becomes a general unsecured creditor of the bank for the amount of his deposit."  *Id.* (citing *Peoples Westchester Savings Bank*, 961 F.2d at 330 (noting that the depositor "parts with the title to his money, and loans it to the banker" and the bank "in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount"); *see also United States* v. *All Funds on Deposit on or Before Nov. 8, 1994 in Citibank Account No. 42773634 in the Name Imitiaz Ahmed Kahn, et al.*, 955 Supp. 23, 26 (E.D.N.Y. 1997) ("When funds are deposited in a general bank account, title to the money is transferred to the bank and a creditor-debtor relation is formed." (internal quotation marks omitted)); *Safian* v. *Irving Nat. Bank*, 196 N.Y.S. 141, 142 (N.Y. App. Div. 1922) ("When the plaintiff paid the money to the bank, the bank did not become a bailee, who was required to send the identical money to Moszek Zelik Safian at the address in Poland, nor was any fiduciary or trust relation established between the parties which would be cognizable in a court of equity.").

## II.     Robards Fails to Allege Standing as a Bailor of Funds in the Account

Despite his opposition brief's assertion that funds in the Account are traceable to "to the bailment agreement between Mr. Robards and Ganguly," the Petition and the attached exhibits make clear that no such bailment agreement existed *as between Robards and Ganguly*.  Rather, as alleged, Robards entered into a purported bailment agreement with a third-party, William W.

Mohr, Esq., who was instructed to forward funds from Robards to an account in the name of Ganguly's fraudulent investment vehicle, "Astute Partners," in connection with Ganguly's fraudulent investment scheme.  *See* Pet. ¶¶ 7-10, 13; *id.*, Exs. B, D.  Only after that intermediary transfer were funds sent to the Account, where they were ultimately restrained.  Thus, the Petition makes plain that at least two fund transfers occurred following the transfer that Robards identifies as his "bailment":  one from his purported bailee (Mohr) to Astute Partners, and a second from Astute Partners to the Account.  Robards does not allege, and provides no basis for his opposition brief's claim, that he was a "bailor" with respect to any funds in either the Account or in the intermediary account to which Mohr forwarded Robards' funds.[3]  In sum and as alleged, Robards was, at most, a general creditor of the banks and Ganguly with respect to the funds on deposit in each of these accounts.  As a general creditor, Robards lacks standing to contest forfeiture for the reasons set forth in the Government's opening brief in support of the Motion.  *See, e.g.*, *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007); *United States v. Ribadeneira*, 105 F.3d 833, 834-37 (2d Cir. 2007); *United States v. Schwimmer*, 968 F.2d 1570, 1580-81 (2d Cir. 1992); *United States v. Agnello*, 344 F. Supp. 2d 360, 364 (E.D.N.Y. 2004); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).[4]

---

[3] In addition to this dispositive failure to allege a bailor-bailee relationship with respect to the intermediary Astute Partner account or the Account itself, the concept of bailment is inapposite in the context of an admitted attempt to invest with Ganguly, rather than to provide funds for Ganguly to safeguard pending the return of that property to Robards.  Through his investment, Robards risked the loss of his funds, *see* Pet. ¶ 5 (expressly describing Robards' fund transfer as an investment and the intended use of his funds as a "guarantee" (*i.e.*, funds placed at risk as collateral) for raising capital in connection with Ganguly's purported investment scheme), and had no intention of a future return of those precise funds at the conclusion of his investment.  *See United States* v. *$3,000 in Cash*, 906 F. Supp. 1061, 1070 (E.D. Va. 1995) ("Mbakpuo claims he gave money to Uzodinma in anticipation of a joint commercial real estate venture.  In so doing, he merely made a business investment, not a bailment."); *see also*

[4] The Government respectfully refers the Court to the Government's opening brief for a discussion of the legal principles relating to the imposition of a constructive trust and the application of those principles in this case.  Robards' response provides no basis for the imposition of a constructive trust.

**CONCLUSION**

Ishita Ganguly's fraud has injured many victims to the tune of several million dollars. Her efforts to dissipate and hide those stolen funds have created significant difficulties for those victims, including Robards, none of whom may ultimately recover 100% of their stolen funds. As regrettable as this situation is, a modification of the Preliminary Order along the lines claimed by Robards is not the legally appropriate or equitable means of righting Ganguly's wrongs. For the reasons set forth above, as well as those set forth in the Government's opening brief, Robards lacks standing to contest the Preliminary Order, and the Petition should therefore be dismissed in its entirety.

Dated:   May 16, 2015
        New York, New York

        Respectfully submitted,

        PREET BHARARA
        United States Attorney for the
        Southern District of New York
        Attorney for the Plaintiff
        United States of America

        By:_____/s/_____
        Andrew C. Adams
        Assistant United States Attorneys
        (212) 637-2340