UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                    :

UNITED STATES OF AMERICA,        :
                                      :

            -against-               :
                                      :

ISHITA GANGULY,               :
                                      :

                   Defendant.  :
                                      :
--------------------------------------------------------X

14-CR-123 (VSB)

**MEMORANDUM AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8 / 2

**VERNON S. BRODERICK, United States District Judge:**

      Currently pending before me is the Government's motion to dismiss the forfeiture petition filed by Bob N. Robards ("Robards"). (Doc. 73.) Robards is one of several victims of the fraud scheme perpetrated by defendant Ishita Ganguly ("Ganguly" or "Defendant"). Robards seeks an ancillary hearing pursuant to 21 U.S.C. § 853(n) in order to recognize his legal interest in the monies and funds held in J.P. Morgan Chase & Company Escrow Account 818002693, ("Account 818002693"), so that he can recover his losses ahead of the other victims of Ganguly's fraud. However, Robards petition—even accepting all of his factual assertions as true—fails to state a valid basis for modification under 21 U.S.C. § 853(n). Therefore, the Government's motion to dismiss Robart's forfeiture petition, (Doc. 73), is GRANTED, and Robards's petition, (Doc. 67), is DENIED.

1

## I.     Factual and Procedural Background

On February 20, 2014, a grand jury in the Southern District of New York indicted Ishita Ganguly of  (1) securities fraud, in violation of Title 15, United States Code, Section 78j(b) & 78ff; (2) wire fraud, in violation of Title 18, United States Code, Section 1343; and (3) money laundering, in violation of Title 18, United States Code, Section 1957.  (Doc. 7.)  The Indictment alleged, among other things, that Ganguly solicited various investors to send her millions of dollars on the basis of false representations that their investments would be used to purchase certain types of securities that would generate a guaranteed rate of return of 1000%.  (*Id.* at 2.)  Using this and other misrepresentations, Ganguly diverted millions of dollars of those funds to for herself, and not for the purposes she had told investors.  (*Id.*)

On May 23, 2014, I entered a post-Indictment restraining order with respect to certain funds alleged to have been obtained through Ganguly's fraud.  (Doc. 18.)  Specifically, the Order restrained Ganguly and others from dissipating up to $3,900,000 held in Account 818002693.  (*Id.* at 2.)  On October 3, 2014, Ganguly pled guilty, pursuant to a plea agreement, to Count One of the Indictment.  (*See* ECF Minute Entry October 3, 2014.)  The plea agreement and accompanying consent preliminary order of forfeiture ("Preliminary Order") provided for the forfeiture of the funds restrained in Account 818002693.  (*See* Doc. 54 at 2-3.)  Pursuant to the Preliminary Order, the funds in Account 818002693 are to be applied in partial satisfaction of a forfeiture money judgment in the amount of $7,000,000, representing proceeds obtained from various victims—including Robards—through Ganguly's fraudulent conduct.  (*Id.* at 4-5.)  During her plea allocution, Ganguly admitted that she did not "invest all according to the plan [she outlined to investors], but rather appropriated some of the funds for my personal use . . . [a]nd [] used those funds for home and repairs and debts and to buy jewelry."  (Pl. Tr. at 18:14-

2

17.)[1]  During her plea allocution, Ganguly also admitted to the forfeiture allegation in the

Indictment as it related to Count One, and she agreed to forfeit to the government money that

represented the amount of proceeds she received or obtained as a result of her offense.  (*Id.* at

12:13-13:8, 20:17-25.)

On February 17, 2015, I sentenced Ganguly to 24 months' imprisonment and three years

of supervised release.  (Sent. Tr. at 37:8-13.)[2]  On that same day, I entered a Restitution Order,

providing for the payment of $9,404,537.35 to the several victims of Ganguly's fraud identified

on a sealed schedule attached to the Restitution Order, (Doc. 55), and I also entered the

Preliminary Order, (Doc. 54).  That sealed schedule also laid out the specific amounts due to

each identified victim.  (*See* Doc. 55.)

On March 25, 2015, Robards submitted his petition, requesting that the Preliminary

Order by modified to reflect his alleged superior interest in the funds found in Account

818002693.  (Doc. 67.)  Specifically, Robards claims that monies obtained from him by Ganguly

are directly traceable to the funds found in Account 818002693, and that he therefore has an

interest in those funds superior to the Government's interest.  (*Id.* ¶¶ 22, 23.)  Robards alleges

that he was put into contact with Ganguly on February 9, 2013 in order to pursue investment

opportunities.  (*Id.* ¶ 2.)  Pursuant to Ganguly's instructions, Robards entered into a bailment

agreement with William Mohr on April 4, 2013 "with the sole purpose of Mohr acting as

paymaster to pay" $6,198,058.85 into an HSBC account for Astute Partners, the investment

entity of which Ganguly claimed to be a managing director.  (*Id.* ¶ 7.)  Mohr delivered these

funds into the specified account on April 10, 2013.  (*Id.* ¶ 10.)  Ganguly did not use the funds in

---

[1] "Pl. Tr." refers to the October 30, 2014 Plea Proceeding Transcript.  (Doc. 43.)
[2] "Sent. Tr." refers to the March 23, 2015 Sentencing Transcript.  (Doc. 60.)

connection with the investment programs as she promised, and Robards contends that "by transferring his funds to Ganguly based on her fraudulent actions, [he] retained legal ownership of all funds under the legally recognized concept of constructive trust among other legal remedies and rights to ownership."  (*Id.* ¶ 12.)  Robards also asserts that on April 12, 2013, Ganguly misappropriated at least $3,900,000.00 of Robards's funds and caused that amount to be transferred from the Astute Partners account into an escrow account held in the name of Leonard Bronner.  (*Id.* ¶ 13.)  Robards believes that this escrow account is Account 818002693, and that the funds seized by the Government from Ganguly are therefore directly transferrable to Robards.  (*Id.* ¶¶ 13, 14.)

On April 6, 2015, the Government filed a proposed briefing schedule regarding their motion to dismiss Robards's petition, (Doc. 69), and I approved the proposed schedule, (Doc. 70).  The Government submitted the papers regarding their motion to dismiss on April 29, 2015, (Docs. 73, 74), Robards submitted his opposition on May 13, 2015, (Doc. 76), and the Government submitted their reply on May 16, 2015, (Doc. 77).

## II.   Legal Standard

Title 21, United States Code, Section 853(n) provides that a third party seeking to assert an interest in forfeited property must first establish that they have a "legal interest" in the property.  21 U.S.C. § 853(n).  In order to establish such a legal interest, a petitioner must allege one of two alternative bases for recovery:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

4

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section . . . .

*Id*. § 853(n)(6).  If a petitioner can establish by a preponderance of the evidence that it has a legal interest in the property superior to the Government's interest, the court should amend the order of forfeiture to reflect this interest.  *See* 21 U.S.C. § 853(n)(6); *United States v. Ribadeneira*, 105 F.3d 833, 834-35 (2d Cir. 2007).  However, § 853(n)(6) works in conjunction with the "relation-back" doctrine

> embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense vests in the United States upon the commission of the [offense]. . . . Because forfeitable property vests in the government immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the underlying crime was committed—that is, before the government's interest vested.

*United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015).  This means that §853(n)(6)(A) "is better suited to defending a third party's right to the 'instrumentalities' of a crime—property used by a defendant to facilitate his criminal acts, but that pre-exists those acts themselves—than to proceeds that necessarily arise only after or upon the commission of the crime."  *Id.* at 167.

Further, in considering the government's motion to dismiss, I apply the same pleading standards governing motions to dismiss civil complaints.  *Pacheco v. Serendensky,* 393 F.3d 348, 352 (2d Cir. 2004).  In particular, "the facts set forth in the petition are assumed to be true" for purposes of this motion.  Fed. R. Crim. P. 32.2(c)(1)(A).

### III.   Discussion

The Government argues that, because Robards does not allege that (1) he owns Account 818002693, (2) Account 818002693 is an escrow account established for his benefit, or (3) he is a bona fide purchaser for value of the funds found in Account 818002693, his claim for standing under 21 U.S.C. § 853(n) must rest on the allegation that he has a legal right in the funds

"superior to any right, title, or interest of [Ganguly] at the time of the commission of the acts which gave rise to the forfeiture of the property . . . ." (Gov.'s Mem. at 8-9 (quoting 21 U.S.C. § 853(n)(6)).[3]  The Government further contends that, pursuant to 21 U.S.C. §853(c), the Government's interest in the funds vested at the time of Ganguly's crime, and Robards does not (and cannot) allege that a superior interest was vested in him at that time.  (*Id.* at 9.)  This leaves Robards in the position of a general unsecured creditor, who must make a claim to the Attorney General for pro rata distribution of the funds from Ganguly's fraud along with other victims.  (*Id.*)  Further, although the Government does not believe that Robards explicitly makes a claim for a constructive trust here, the Government points out that such a trust would be inappropriate because a constructive trust is an equitable remedy, and the equities here do not favor Robards.  Specifically, the Government argues that imposing a constructive trust here would cause a detriment to other victims who have chosen to await the fair distribution of the property through forfeiture.  (*Id.* at 9-10.)

Robards counters by contesting the Government's characterization of him as a general creditor of Ganguly.  (Pet.'s Br. at 1.)[4]  Robards argues that the bank records will prove that the funds at issue were the product of his bailment agreement with Mohr and were never commingled with the funds of other victims.  (*Id.* at 2.)  In fact, Robards contends that the bailment agreement itself is evidence of his superior legal claim, as he was in truth a bailor with respect to the funds rather than a general creditor.  (*Id.*)  Robards argues that this gives him a superior legal claim to the funds when compared with the claims of the Government or of a general creditor of Ganguly.

---

[3] "Gov.'s Mem." refers to the Government's Memorandum of Law in Support of its Motion to Dismiss the Petition of Bob N. Robards.  (Doc. 74.)

[4] "Pet.'s Br." refers to Petitioner's Response to Government's Motion to Dismiss Petition.  (Doc. 76.)

Robards's claims for a superior interest, then, appear to rest on two separate theories:  (1) that he was a bailor with respect to the funds in Account 818002693, and (2) that regardless of his bailor status the evidence will demonstrate that all of the funds in Account 818002693 are directly traceable to him.  I address each of these claims in turn, as well as Robard's argument about a constructive trust.

### A.   *Robards's Status as a Bailor of the Funds in Account 818002693*

New York law defines a bailment as:

> [A] delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, and that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be.  It is essential that there be either an actual or constructive delivery by the bailor as well as actual or constructive acceptance by the bailee.

*Herrington v. Verrilli*, 151 F. Supp. 2d 449, 457 (S.D.N.Y. 2001).  Here, Robards alleges he had a bailment agreement with Mohr regarding the funds which he transferred to Mohr, (Pet. ¶ 7),[5] but he does not allege that either he or Mohr had any such agreement with Ganguly.  Therefore, once Mohr transferred Robards's funds, Robards had no claim as a bailor to either the funds contained in the Astute Partners HSBC account, or to the funds that Ganguly subsequently deposited into Account 818002693.[6]  In addition, as the Government notes, that fact that Robards gave his money to Mohr with the express intent of having Ganguly invest it is inapposite to the very concept of a bailment.  (Gov.'s Rep. Br. at 5 n.3.)  Robards risked the loss of his funds, and had no expectation of a future return of those precise funds at the end of the investment.  Therefore, despite Robards claims to the contrary, as a legal matter he may not have been a bailor with regards to the funds he

---

[5] "Pet." refers to Robard's Petition for Ancillary Hearing.  (Doc. 67.)

[6] Robards Petition also alleges that the funds in Account 818002693 were held there by Bronner as a bailment for Ganguly.  (Pet. ¶ 14.)  However, the status of those funds as a bailment between Ganguly and Bronner does nothing to bolster Robards's claims regarding his claim to the funds.

gave Mohr initially.  *Cf. United States v. $3,000 in Cash*, 906 F. Supp. 1061, 1070 (E.D. Va. 1995)

("Mbakpuo claims he gave money to Uzodinma in anticipation of a joint commercial real estate

venture.  In so doing, he merely made a business investment, not a bailment.")

### B.  *Robards's Status as a Creditor of Ganguly*

Robards also appears to argue that, regardless of his bailment, his claim to the funds in

Account 818002693 is superior to the Government's claim because he was a depositor of funds

with Ganguly, the funds are directly traceable to him, and the funds from Robards were not

commingled with the funds of other victims of Ganguly's fraud.  (Pet's Br. at 1.)  However, these

claims fail to establish Robards as anything more than a general creditor of Ganguly, and general

creditors of a defendant do not have standing to contest a preliminary order of forfeiture under 21

U.S.C § 853(n)(2).  *See, e.g.*, *DSI Assocs. LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007).

Based on his own factual assertions, Robards maintained no secured interest in the funds he

transferred to Ganguly.  Therefore, even if he can trace his funds to Account 81800269 and they

were not commingled with other funds, his status is still that of a general creditor.  *E.g. id.* (finding

that claimant who did not retain a secured interest in the property it sold to the defendant lacked

standing to contest the forfeiture of that property in an ancillary proceeding); *United States v. BCCI*

*Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999) ("Persons who have, as a matter

of state law, voluntarily transferred their property interest to the defendant are no longer the owners

of that property, and are in no greater position to assert a claim to that property under § 1963(1)(2)

than are other creditors and victims who cannot trace their former property into the defendant's

account.").[7]  Robards's claim to the funds is therefore no greater than that of any of the other

---

[7]  Furthermore, here the forfeitable property constitutes the proceeds of Ganguly's fraud.  Pursuant to
18 U.S.C. § 853(c), the Government's interest in this property vested at the time of the "commission of the act
giving rise to the forfeiture under this section."  This statutory structure may mean that, when the forfeited property
consists of the proceeds of the crime, it is impossible for any party to show an interest greater than the Government's

victims of Ganguly's fraud and his claim to the funds in Account 818002693 is not superior to the Government's claim to those funds.

### C. Constructive Trust

Under New York law, a constructive trust is an equitable remedy that a court may impose "[w]hen property has been acquitted in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest," and "equity [thereby] converts him into a trustee." *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978). The formation of a constructive trust generally requires four elements under New York law: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment." *Ades & Berg Grp. Inv'rs v. Breeden (In re Ades and Berg Grp. Inv'rs)*, 550 F.3d 240, 245 (2d Cir. 2008) (per curiam).

While the Second Circuit has urged against rigid imposition of these factors because the "constructive trust doctrine is equitable in nature," *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 362 (2d Cir. 1999), the court has also observed that unjust enrichment is the most important of these factors since "the purpose of the constructive trust is prevention of unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (quoting *Simonds*, 45 N.Y.2d at 242). "Unjust enrichment results when a person retains a benefit which, under the circumstances of the transfer and considering the relationship of the parties, it would be inequitable to retain." *Counihan*, 194 F.3d at 361.

Robards petition argues that he maintained legal ownership of the funds transferred to Ganguly "under the legally recognized concept of constructive trust among other legal remedies

---

under 21 U.S.C. § 853(n)(6)(A) because the proceeds of a crime cannot exist until the crime is committed. *See United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000) ("It is true, as the Government points out, that this interpretation of §853(n)(6)(A) leads inevitably to the conclusion that §853(n)(6)(A) is likely never to apply to the proceeds of the crime . . . . Proceeds of the crime . . . do not precede the crime.").

and rights to ownership." (Pet. ¶ 12.) The Government does not believe Robards's petition expressly requests a constructive trust, but argues that regardless he is not entitled to one in this situation because the equities plainly do not favor Robards. (Gov. Br. at 9.) Imposition of a constructive trust would disadvantage other victims of Ganguly simply because they could not directly trace their funds, or because they had chosen to wait for a fair distribution of funds through forfeiture proceedings. (*Id.* at 9-10.)

I agree that a constructive trust is inappropriate here for at least four reasons. First, a constructive trust is not necessary here in order to prevent unjust enrichment. While a constructive trust may be appropriate if Ganguly still had control of Account 818002693, Ganguly's interest in Account 818002693 has already been forfeited to the United States. Therefore, the creation of a constructive trust at this stage would do nothing to prevent the unjust enrichment of Ganguly.

Second, as the Government notes, the creation of a constructive trust for Robards benefit would be to the detriment of the other victims of Ganguly's crime. (*See id.* at 10.) Considerations of the effects on other victims "counsel against imposing a constructive trust over forfeited property for the benefit of certain petitioning crime victims where . . . doing so would harm other crime victims also seeking to recover from the same limited pool of forfeited assets." *United States v. Dreier*, No. 09-CR-85, 2010 WL 1223087, at *2 (S.D.N.Y. Mar. 24, 2010). Further, the creation of a constructive trust for a general creditor in a forfeiture proceeding would also cause such a proceeding to more closely resemble a bankruptcy proceeding. If constructive trusts were widely available in such situations, a district court would be unable "to grant forfeiture to the Government until it determined that no general creditor would be unable to satisfy its claim against the

defendant.  That result appears patently at odds with the statutory scheme . . . ."  *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1191-92 (D.C. Cir. 1995).

Third, as noted above, the government has title to the property at issue here.  Robards transferred title to the funds to Astute Partners when the funds were transferred to the HSBC account specified by Ganguly, and that property vested with the United States as soon as Ganguly sought to misappropriate it.  *See United States v. Watts*, 786 F.3d at 166 (noting that the relation-back doctrine "embodied in § 853(c) . . . provides that all property subject to forfeiture based on a criminal offense vests in the United States upon the commission of the [offense].")  Robards has not alleged either a promise by the Government, or a fiduciary relationship with the Government, sufficient to make a constructive trust appropriate here.

Finally, under New York law a constructive trust is an equitable remedy that should not be imposed when there is an adequate remedy at law.  *United States v. $79,000 at Bank of New York*, No. 96-CV-3493, 1996 WL 648934, at *6 (S.D.N.Y. Nov. 7, 1996).  Here, in addition to the restoration process administered by the Department of Justice, Robards also appears to have claims for fraud, breach of contract, and numerous torts against Ganguly.  A constructive trust is inappropriate in such circumstances.

## IV.   Conclusion

For the reasons stated herein, the Government's motion to dismiss, (Doc. 73), is GRANTED, and Robards's petition, (Doc. 67), is DENIED.

SO ORDERED.

Dated:    August 22, 2016
          New York, New York

Vernon S. Broderick
United States District Judge

11